IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
v.                             )    Criminal Action No. 05-206
                               )
MICAELA A. SPENCER,            )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM OPINION**

This matter comes before the Court on the Government's Appeal of the Magistrate Judge's Order of April 29, 2005. Finding that J.J. Kingman road was not a public highway, the Magistrate Judge dismissed a two count Criminal Information that charged Defendant with operating a motor vehicle on a highway while her driving privileges were suspended and operating a motor vehicle on a highway without a valid operator's license. 18 U.S.C. § 13 (2003) (assimilating Va. Code Ann. § 46.2-301 (2002)); 32 C.F.R. § 634.25(f) (adopting Va. Code Ann. § 46.2-300 (2002)).

On October 16, 2004, Defendant drove her vehicle down the Fairfax County Parkway, turned onto J.J. Kingman Road, and stopped at the J.J. Kingman Road entrance to Fort Belvoir. When Defendant reached this gate, the military police guarding the gate requested her driver's license and registration pursuant to their authority to restrict access to Fort Belvoir. Defendant produced a valid Virginia identification card but did not have

her driver's license. Further investigation revealed that Defendant's Virginia driver's license had been suspended. The military police at the gate issued Defendant a citation for operating on a suspended license, and the government later added the second charge when it filed the Criminal Information.

Before a motorist reaches the Fort Belvoir gate, there are no barriers, signs, or other impediments to entry onto J.J. Kingman Road  from the Fairfax County Parkway. At the gate, a sign was posted that read:

> J.J. Kingman Gate
> Open 7 Days a Week
> 0500-2200
> Non-Decal Vehicles Must Register
>
> 100% ID Check
>
> After Hours Use Pence Gate

The J.J. Kingman Gate is closed between 10:00 p.m. and 5:00 a.m. The public is barred from passage during those hours, and anyone wishing to enter Fort Belvoir during those times must go to another gate that is open twenty-four hours everyday. The Garrison Commander has the authority and discretion to restrict public access to Fort Belvoir via J.J. Kingman Road or otherwise, in any way he deems necessary or appropriate. Other than the restrictions listed on the sign at the gate, however, the Garrison Commander has not chosen to restrict public access. Members of the public use J.J. Kingman Road and enter Fort

Belvoir on a daily basis for various personal, commercial, and official purposes.

The issue raised in this appeal is whether or not J.J. Kingman Road is open to the use of the public within the meaning of the Virginia statute. Title 46.2 defines "highway" as

> the entire width between the boundary lines of every way or place *open to the use of the public for the purposes of vehicular travel* in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

Va Code Ann. § 46.2-100 (2003) (emphasis added).

The Supreme Court of Virginia and the Virginia Court of Appeals have addressed the highway issue in several cases. In <u>Prillaman v. Commonwealth</u>, the Supreme Court of Virginia determined that a shopping center parking lot was not a highway because the parking lot was open to the public upon the business owner's invitation. 199 Va. 401, 407-08, 100 S.E. 2d 4, 8-9 (1957). <u>Flinchum v. Commonwealth</u>, 24 Va. App. 734, 485 S.E.2d 630 (Va. Ct. App. 1997), and <u>Roberts v. Commonwealth</u>, 28 Va. App. 401, 504 S.E.2d 890 (Va. Ct App. 1998), both followed the <u>Prillaman</u> decision and held that parking lots did not constitute public highways because travelers were business invitees, invited into the parking lots for private business purposes and for the

benefit of the merchant owners.

In Kay Management Co. v. Creason, the Supreme Court of Virginia held that "evidence of accessability to the public for free and unrestricted use gave rise to a prima facie presumption" that the streets in an apartment complex, which were privately owned and maintained, were highways. 220 Va. 820, 832, 263 S.E.2d 394, 402 (1980). In Furman v. Call, signs at a condominium complex read "Private Property, No Soliciting." 234 Va. 437, 438, 362 S.E.2d 709, 710 (1987). The Supreme Court of Virginia held that these signs prohibited soliciting but did not specifically prohibit the entry of motor vehicles operated by members of the public. 234 Va. 437, 441, 362 S.E.2d 709, 711. Following their previous holding in Kay Management, the Court also found that there was no evidence to rebut the presumption that the public had full and unrestricted access to the parking area; therefore, the condominium parking lot was a highway as defined by the Code of Virginia. Id.

In Coleman v. Commonwealth, the Virginia Court of Appeals addressed the question of a road leading to the Defense General Supply Center, a federal enclave in Chesterfield, Virginia. 16 Va. App. 747, 748, 433 S.E.2d 33, 34 (Va. Ct. App. 1993). On the road there were two entrance gates to monitor access into the enclave. One gate was open and manned twenty-four hours everyday. Vehicles with access decals were permitted to pass freely, while

4

vehicles without decals were generally permitted to pass after stating their business. The other gate was open from morning until evening, Monday through Friday, and vehicles other than trucks were allowed to pass without restriction, even if they did not have a decal. From time to time, during Operation Desert Storm for example, access to the enclave has been limited to people with official business. Id. Considering these facts, the Court of Appeals found that the road was open to the public for purposes of vehicular travel, and therefore it was a highway within the meaning of the Code and not a private road or driveway. 16 Va. App. 747, 749, 433 S.E.2d 33, 34.

In United States v. Smith, 395 F.3d 516 (4th Cir. 2005), the United States Court of Appeals for the Fourth Circuit addressed the issue of whether a CIA access road was a public highway under the Virginia statute. Undisputed evidence showed that there were signs posted along the roadway advising that only CIA employees and those with authorized business may enter CIA property. The Court held that "the presence of signs barring unauthorized admittance is sufficient to establish that the access road is not 'open to the use of the public.'" Id. at 521 (quoting Va. Code Ann. § 46.2-100 (2003)).

The Magistrate Judge, citing the Virginia cases and the Fourth Circuit's decision in Smith, found that the ability to exclude the general public from a road renders the road less than

a highway. The decision in Smith, however, was not based simply on the government's ability to exclude the public, but also, on the fact that the public was prohibited from using the CIA access road. Smith, 395 F.3d at 520 ("The presence of signs barring public entry establishes that the access road is not open to public use."). In the instant case there is no such limitation placed on J.J. Kingman Road. Public access is allowed during daytime hours. The Fort Belvoir signs simply alert drivers that they must register at the gate and produce identification. If they are not on the restricted list, then they will be allowed to continue to travel on J.J. Kingman Road. This case is distinguishable from Prillaman because J.J. Kingman Road is not limited to or open for just business invitees. J.J. Kingman Road is open to the public whether they have business, official or unofficial, in Fort Belvoir or are simply driving through the area.

This case is almost identical to Coleman. The Virginia Court of Appeals found the road on the supply base to be a public highway because it was open to public travel. There were no signs indicating that the road was closed to the public. There were checkpoints on the road that control access to the base, but the public was permitted to use the road. The same is true with J.J. Kingman road. There is a check point, but the public is allowed to use the road during daytime hours whether they have business

within Fort Belvoir or not. As a result, the public is allowed to use J.J. Kingman Road virtually unimpeded. Accordingly, the Court finds that J.J. Kingman Road is a public highway as defined by Section 46.2-100 of the Code of Virginia; therefore, the Magistrate Judge's Order should be reversed.

An appropriate Order shall issue.

                                        /s/
                            _____
                            CLAUDE M. HILTON
                            UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 26, 2005